UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>LEE ANN STENSTROM,<br><br>　　　　　　Defendant. | 3:19-CR-30019-RAL<br><br>**OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE** |

A federal grand jury indicted Lee Ann Stenstrom (Stenstrom) on assaulting, resisting, and impeding a federal officer in violation of 18 U.S.C. §§ 111(a) and 111(b). Doc. 1. On August 12, 2019, Stenstrom appeared before this Court and entered a guilty plea to a superseding information charging assaulting, resisting, and impeding a federal officer in violation of 18 U.S.C. § 111(a). Docs. 42, 51. On November 4, 2019, this Court held a sentencing hearing in Stenstrom's case and imposed a custody sentence of 36 months followed by three years of supervised release. Docs. 68, 69 at 2–3.

Stenstrom is currently incarcerated at Federal Correctional Institution Waseca (FCI Waseca) and has filed a pro se motion for compassionate release, citing her health conditions and the global COVID-19 pandemic as justification. Doc. 70. The Government has responded in opposition. Docs. 71, 74. This Court has considered Stenstrom's motion, and for the reasons stated herein, denies her motion at this time.

**I.　　Background**

Stenstrom's conviction resulted from a physical assault she committed on Rosebud Sioux Tribe Law Enforcement Services Officer Roxanne Hunger. Doc. 59 at ¶¶ 6–7. On December 26,

1

2018, Officer Hunger stopped at a convenience store in Mission, South Dakota. Doc. 59 at ¶ 6. While inside the store, Officer Hunger was approached by Stenstrom. Doc. 59 at ¶ 6. Stenstrom told Officer Hunger that she wanted to report a crime. Doc. 59 at ¶ 6. Officer Hunger replied that Stenstrom should report the crime to dispatch. Doc. 59 at ¶ 6. Stenstrom became hysterical. Doc. 59 at ¶ 6. At that point, Officer Hunger detected the odor of alcohol on Stenstrom's person and suspected that Stenstrom was also under the influence of a stimulant. Doc. 59 at ¶ 6. Because Stenstrom was causing a disturbance in the convenience store, Officer Hunger asked Stenstrom if she could obtain Stenstrom's statement outside. Doc. 59 at ¶ 6.

Once outside, Stenstrom walked toward a parked car, opened the car door, and sat down in the driver's seat. Doc. 59 at ¶ 6. Then Stenstrom started the vehicle. Doc. 59 at ¶ 6. With the car door partially open, Stenstrom started to back up the car. Doc. 59 at ¶ 6. At roughly the same time, Officer Hunger opened the door further and attempted to take the key out of the ignition. Doc. 59 at ¶ 6. Officer Hunger was immediately knocked down by the moving vehicle and struggled to not get run over. Doc. 59 at ¶ 6. Officer Hunger screamed for Stenstrom to stop the car, but Stenstrom continued to reverse the car as Officer Hunger hung onto the door. Doc. 59 at ¶ 6. Officer Hunger then fell to the ground. Doc. 59 at ¶ 6. Stenstrom closed the door and drove away. Doc. 59 at ¶ 6.

Under the sentencing guidelines, Stenstrom's total offense level was 13 and Stenstrom was in criminal history category V. Doc. 69-1 at 1. This meant that Stenstrom's advisory guideline range was 30 months to 37 months custody. Doc. 69-1 at 1. Under the plea agreement, the parties contemplated a 36-month custody sentence. Doc. 42 at 4–5. This Court held a sentencing hearing in Stenstrom's case on November 4, 2019. Doc. 68. After hearing argument from both parties as to the appropriate sentence and finding the plea agreement to be reasonable, this Court sentenced

Stenstrom to 36 months custody with a three-year term of supervised release. Doc. 69 at 2–3. Stenstrom has been in custody since February 22, 2019, and is currently incarcerated at FCI Waseca. Doc. 17; see also Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 14, 2020).

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. As a new virus, COVID-19 has presented somewhat of a mystery to medical professionals and society in general. Some people can contract the virus and be completely asymptomatic, while other people develop complications and die from the illness. The Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions, sickle cell disease, and Type 2 diabetes. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 14, 2020).

Stenstrom suffers from chronic viral hepatitis C, and she has mental health issues including depression, anxiety, and post-traumatic stress disorder. Doc. 73 at 80–82, 261. On September 22, 2020, Stenstrom tested positive for COVID-19. Doc. 73 at 5–13, 110, 261. Stenstrom has now filed a motion for compassionate release with this Court based on those circumstances and her inability to practice social distancing in the correctional facility setting during the COVID-19 pandemic. Doc. 70.

**II.     Legal Standard**

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### III. Discussion

Stenstrom submitted a request for compassionate release to the warden of her institution on July 30, 2020. Doc. 73 at 311. On August 19, 2020, the warden denied Stenstrom's request for compassionate release. Doc. 73 at 312. Stenstrom's request was submitted more than thirty days ago, and the BOP has not submitted a motion for compassionate release on Stenstrom's behalf. Therefore, this Court may entertain Stenstrom's motion directly.

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission; "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" to adequately deter criminal conduct, to protect the public; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). This Court also should consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. The nature and circumstances of the offense are detailed above and caused physical injury to Officer Hunger, who was treated at Rosebud Indian Health Service Hospital for an abrasion to her left shin. Doc. 59 at ¶ 6. Those facts, along with Stenstrom's criminal history points, resulted in a 30 to 37 month guideline range under the sentencing guidelines. A guideline range sentence like the one imposed was necessary for several reasons. First, a 36-month sentence adequately reflected the seriousness of the offense and provided just punishment. Second, the type of criminal conduct at issue here requires a powerful deterrent, and the 36-month sentence was designed to protect the public and to provide Stenstrom with substance abuse treatment in an effective manner. Doc. 69 at 2. Overall, the 36-month sentence was sufficient to achieve the § 3553(a) sentencing factors, but it was not greater

than necessary. Stenstrom has now served approximately 61.4% of her full sentence and has served approximately 70.2% of her "statutory term." Doc. 73 at 310. Since she entered BOP custody, Stenstrom, now age 37, has begun English and GED education courses and has had only two disciplinary violations during her incarceration. Doc. 73 at 306, 307.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider

6

"extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Stenstrom has not clearly articulated which provision of U.S.S.G. § 1B1.13 comment note applies to her case. Conceivably, she argues that she qualifies under both Comment note 1(A) and 1(D), so this Court will address each in turn. Comment note 1(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). However, Stenstrom does not claim that it is her serious physical or medical condition that makes her unable to provide self-care in her correctional facility. Rather, she argues that the conditions of confinement, a factor not contemplated by the comment note, make it difficult or impossible to practice the type of self-care recommended by the CDC. Doc. 70. Therefore, Stenstrom cannot establish "extraordinary and compelling" reasons to justify a sentence reduction under comment note 1(A)(ii).

Stenstrom also appears to argue that she qualifies for compassionate release under the "catch all provision" of U.S.S.G. § 1B1.13 comment note 1(D). Stenstrom argues that her inability to practice social-distancing and to comply with other CDC guidelines during the COVID-19 pandemic establish "extraordinary and compelling" reasons other than those specifically identified to justify a sentence reduction. Doc. 70. The COVID-19 pandemic has impacted this country and its economy in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify

7

compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Stenstrom has not alleged that she suffers from any medical conditions that put her at a greater risk of severe illness if she contracts COVID-19. In the Court's review of Stenstrom's medical records, none of her medical conditions are recognized by the CDC as significant risk factors for contracting or developing a severe illness from COVID-19. See Doc. 73. In fact, Stenstrom has already contracted COVID-19, and there is no evidence to suggest that she has suffered severe complications from the infection. See Doc. 73 at 84–85. This Court cannot say to what extent Stenstrom's life is threatened by the existence of COVID-19 in FCI Waseca, especially considering that the BOP has taken precautions to protect her and her fellow inmates. See BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Dec. 14, 2020). FCI Waseca currently has zero active inmate infections of COVID-19 and four active COVID-19 cases among the facility's staff; 440 inmates and 17 staff have recovered from the illness, and the facility has reported no deaths. See COVID-19, Coronavirus, Federal Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Dec. 14, 2020).

Stenstrom has served more than half of her 36-month sentence for assaulting, resisting, and impeding a federal officer. Stenstrom appears, to her credit, to have worked on improving herself in custody with coursework. Overall, the original sentence was chosen with care, considering Stenstrom's and her community's needs and all of the other applicable sentencing factors. Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to

justify a sentence modification because such a reduction would not be sufficient to achieve the goals of sentencing.

## IV. Conclusion and Order

Therefore, it is hereby

ORDERED that Stenstrom's motion for compassionate release, Doc. 70, is denied.

DATED this 15th day of December, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE